**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**ALBERT BUSTILLOS,**

      **Plaintiff,**

**v.**                               **No. 2:20-cv-01060-JCH-GJF**

**THE CITY OF ARTESIA and OFFICER**
**DAVID BAILEY,**

      **Defendants.**

**DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Defendants, by and through their counsel of record, Atwood, Malone, Turner & Sabin, P.A., by Bryan Evans and Renee Gantert and, for their Reply in Support of their Motion for Summary Judgment, state:

**I.**

**DEFENDANTS' REPLY CONCERNING PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

*UMF 7:*      Plaintiff purports to deny Defendants' Undisputed Material Fact No. 7 "as incomplete." *Response, p. 2.* As an initial matter, Defendants' UMF No. 7 should be deemed admitted, as Plaintiff's denial of it "as incomplete" falls short of specifically controverting the fact set forth therein—i.e., that Navajo Oil Company security guard Benito Martinez called 911 and reported that a male subject was filming the refinery. Under Rule 56 of the Federal Rules of Civil Procedure and the Local Rules, a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record. FED. R. CIV. P. 56(c)(1); D.N.M.LR-Civ 56.1(b) (nonmovant must refer *with particularity* to those portions of the record

1

upon which the nonmovant relies for a claimed dispute and "[a]ll material facts. . . will be deemed undisputed unless specifically controverted.").

Second, Defendant disputes Plaintiff's assertion that Mr. Martinez reported that Bustillos "was outside the refinery." *Response, p. 2.* In support of this assertion, Plaintiff cites a transcript of the 911 call. At the portion of the transcript Plaintiff cites, the transcriber quotes Mr. Martinez as stating that Plaintiff was "on the other side of the street." *Plaintiff's Response, Ex. 1, at 2:20-22.* Defendants do not hear that in the audio of the 911 call and very much dispute that this is what Mr. Martinez said.  Despite their best efforts, Defendants cannot make out what Mr. Martinez said at this portion of the call.  *See Audio of 911 Call, attached hereto as Exhibit 1*, *at approximately 1:03.*

Furthermore, even assuming Mr. Martinez did tell the dispatcher Plaintiff was "on the other side of the street", this is immaterial.  The dispatcher's call log documents that the report was that Plaintiff was "on the outside of the fence, but filming inside of the refinery yard" and that this is what was relayed to Corporal Bailey. *See Ex. 4 to Defendants' MSJ, and Ex. 5 to Defendants' MSJ, at approximately 0:15.*

**UMF 16:**        Plaintiff denies that he "argued" with Corporal Sanchez. *Response, p. 2.* Plaintiff fails to raise a *genuine* dispute as to Defendants' UMF 16.  First, he does not cite to any particular materials in the record to support his claimed dispute.  Second, he admits he refused to provide identification to Corporal Sanchez and "stated his belief that he was not legally required to provide identification." *Id.* Third, Plaintiff's video speaks for itself.  It clearly shows Plaintiff arguing with Corporal Sanchez about his belief he "had to have broken the law" in order for her to make a lawful demand for his ID, and about his right to film the refinery from public property.

*Ex. 3 to Defendants' MSJ, at 21:34—23:11.*

**UMF 22:**     Plaintiff denies that he talked over Corporal Bailey.  In support of this contention Plaintiff states merely that the "exhibit speaks for itself." *Response, p. 2.* Here again, Plaintiff fails to controvert Defendants' UMF 16 by citing to *particular parts of materials in the record.* FED. R. CIV. P. 56(c)(1)(A).  In any event, the Exhibit *does* speak for itself and, therein, Plaintiff repeatedly interrupts and talks over Corporal Bailey. *Ex. 3 to Defendants' MSJ, at approximately, 24:10—25:20.* Defendants' UMF 22 should be deemed undisputed.

**UMF 23:**     In response to Defendants' UMF 23, Plaintiff responds that he "admits he refused to provide identification." *Response, p. 2.* To the extent Plaintiff purports to deny any fact set forth in Defendants' UMF 23, he has failed to support the denial with any citation to any particular part of the record and thus, has failed to raise any genuine dispute as to any fact set forth in Defendants' UMF 23.

**UMF 24:**     Plaintiff does not clearly state whether he is admitting or denying Defendants' UMF 24, but merely responds that "Corporal Bailey arrested Plaintiff for concealing identity." *Response, p. 2.* Again, this response does not raise any genuine dispute as to any fact set forth in Defendants UMF 24.  It should be deemed admitted and undisputed.

**UMF 25:**     Defendants' UMF 25 states that it was the anniversary of the 9/11 terrorist attacks and that this was something Officer Bailey had in mind, as it is a day when officers are on heightened alert to watch for anything out of the ordinary. *MSJ, UMF 25.* Plaintiff "denies" this

fact as "immaterial" because "Corporal Bailey's subjective beliefs are immaterial." *Response, p. 2.* Plaintiff is mistaken.  Even though the existence of reasonable suspicion is measured by an objective standard, *United States v. De La Cruz,* 703 F.3d 1193, 1196 (10th Cir. 2013), it takes into account *all* facts known to the officer and "allows [them] to draw on their own experience . . . . to make inferences from and deductions about the cumulative information available to them[.]" *United States v. Arvizu,* 534 U.S. 266, 273 (2002);  *Ornelas v. United States,* 517 U.S. 690, 699 (1996) ("a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.");  *United States v. Gutierrez-Daniez,* 131 F.3d 939 (10th Cir. 1997) ("In every case. . . the officer 'is entitled to assess the facts in light of his experience' in detecting criminal activity.") (*quoting United States v. Brignoni-Ponce,* 422 U.S. 873, 885 (1975)); *United States v. Rice,* 483 F.3d 1079, 1083 (10th Cir. 2007) ("Reasonable suspicion is based on the totality of circumstances, *taking into account an officer's reasonable inferences based on training, experience, and common sense.*") (emphasis added).  Plaintiff does not dispute that the date was September 11.  He also does not dispute that this is something Corporal Bailey specifically had in mind because, in Bailey's experience, it is a day when officers are on heightened alert to watch for anything out of the ordinary. The fact that Corporal Bailey has no training in "terrorism activity in the City of Artesia", *Response, p. 3.,* is irrelevant and does nothing to discount Bailey's awareness of the date and his experience with respect to its significance. UMF 25 is material and undisputed.


   ***UMFs 26, 27 and 28***:  Here again, Plaintiff denies Defendants' UMFs 26, 27 and 28 "as immaterial". *Response, p. 3.* As previously set forth, Corporal Bailey's experience that Plaintiff's

behavior was out of the ordinary and his observation that it was alarming enough to Navajo security

staff that they felt it necessary to call law enforcement is absolutely relevant. Plaintiff's argument

that "'[O]ut of the ordinary' is not the relevant legal standard" misses the point.  Again, Officer

Bailey is entitled to rely on his experience as an officer. Furthermore, "[r]easonable suspicion may

exist even if it is more likely than not that the individual is not involved in any illegality." *United*

*States v. McHugh,* 639 F.3d 1250, 1256 (10th Cir. 2011) (internal quotation omitted);  *see also*

*Arvizu,* 534 U.S. at 277 ("A determination that reasonable suspicion exists. . . need not rule out the

possibility of innocent conduct."). Defendants UMFs 26, 27 and 28 *are* material and undisputed.


**UMF 29:**        Plaintiff denies UMF 29, arguing that "Corporal Bailey had no information

that Bustillos was being confrontational." *Response, p. 3.* Plaintiff is incorrect. Corporal Bailey

knew that Bustillos was filming the Navajo Refinery for unknown reasons, was doing so on 9/11,

that he had an interaction with a Navajo security guard and that, as a result of that reaction, the

security guard felt it necessary to call law enforcement. *UMF 28.* These facts, combined with

Corporal Bailey's experience that Plaintiff's behavior was out of the ordinary, render Bailey's

inference that Plaintiff had been confrontational with Navajo employees reasonable.  Whether that

inference was ultimately correct is irrelevant. *United States v. Avezov,* 731 F. Supp. 2d 1194, 1203

(N.D. Okla. 2010) ("Even assuming that [the officer] made a mistaken assumption that the stories

were inconsistent, [officer's] belief that defendants' stories were contradictory was reasonable

under the circumstances."); *United States v. Shareef,* 100 F.3d 1491, 1505 (10th Cir. 1996)

(acknowledging that [a] mistaken premise can furnish grounds for a *Terry* stop"). In short, it is

undisputed that Corporal Bailey inferred that Plaintiff had been confrontational with Navajo

employees and that the inference was reasonable based on the information Bailey had and the

experience he drew from in processing that information.

*UMF 30:*        Plaintiff purports to dispute Corporal Bailey's belief at the time of his arrest that Navajo Refinery's property line extended all the way to the curb.  Plaintiff cites to nothing in the record discounting that Corporal Bailey did, in fact, have this belief.  UMF 30 should be deemed undisputed.  Plaintiff's assertion that Corporal Bailey's belief "that somehow a company would own a sidewalk is contrary to law and contrary to all human experience" is supported only by Plaintiff's own self-serving affidavit, which does nothing to show that Corporal Bailey's belief was "contrary to law and all human experience" at all. *See Ex. 3 to Response, p. 3-6.* First, to say that Bailey's belief was that Navajo "own[ed] a sidewalk" mischaracterizes his belief.  As Plaintiff himself acknowledges, the area he walked along was not an ordinary sidewalk at all, but "an open area" between Navajo's fence and cement barriers. *Ex. 3 to Response, ¶ 6; see also Ex. 13 to Response.* Second, the fact that Corporal Bailey's belief was reasonable is demonstrated by the fact that Navajo's own employees thought the Company owned all the way to the curb. *MSJ, UMF 31.* It is further demonstrated by the fact that Navajo has behaved as if it *does* own all the way to the curb. As Plaintiff acknowledges, they have placed the cement barriers "several feet on public property." *Ex. 3 to Response, p. 6.* The fact that Officer Bailey's belief ultimately proved to be mistaken does not undermine reasonable suspicion.  Indeed, the fact he possessed this belief and that it was reasonable weighs in favor of reasonable suspicion. Again, a reasonable mistake of fact can still support reasonable suspicion. *United States v. Pena-Montes,* 589 F.3d 1048, 1052 (10th Cir. 2009) ("we may weigh objectively reasonable mistakes of fact made by the officer in favor of reasonable suspicion.").

**UMF 31:** Plaintiff denies that the belief of Navajo's own employees as to the Refinery's boundaries is material because Corporal Bailey lacked knowledge of what these employees told Plaintiff. *Response, p. 3.* The argument misses the point.  As explained in the discussion of UMF 30, above, Defendants cited evidence concerning Navajo's employees only to underscore the reasonableness of Corporal Bailey's belief that Navajo owned all the way to the curb.  UMF 31 is material and undisputed.

**UMF 32-40:**   Plaintiff disputes Corporal Bailey's understanding that Navajo Refinery was a "federally protected facility" as "immaterial and nonsensical". *Response, p. 3.* Here again, Corporal Bailey's understanding about the property he had been called to is *not* immaterial.  Nor is it nonsensical.  As set forth in Defendants' Motion, Corporal Bailey's belief that Navajo Refinery was a "federally protected facility" is not at all unreasonable. Indeed, as part of the "uniquely critical" infrastructure sector, the refinery *is* of special interest to the Federal Government, which collaborates with the industry to develop and achieve critical infrastructure security and resilience goals and priorities. *MSJ UMFs 33-40.*   Plaintiff disputes the facts Defendants set forth which show the unique relationship between the federal government and facilities like Navajo Refinery "as immaterial" because none of the information was known to Corporal Bailey.  The point, however, is not that Corporal Bailey knew these specific facts, but that his understanding that the refinery was "federally protected" was not at all unreasonable— indeed, it was not even inaccurate.  The refinery is "federally protected" in a way many buildings and facilities are not, as illustrated by the facts set forth in Defendants UMFs 32-40.[1]

---

[1] As a side note, Plaintiff's demand for "data. . . that supports an inference that 'terrorists are prone to stand on public sidewalks conspicuously filming their intended targets 'in a prolonged manner'" is misplaced.  It is undisputed that the Department of Homeland Security has identified filming of refineries as suspicious behavior.  Plaintiff's concerns with or skepticism about that determination are irrelevant.  Defendants address Plaintiff's demand only to the extent

## II.

## RESPONSE TO PLAINTIFF'S "MATERIAL FACTS"

Defendant admits Plaintiff's "Material Facts" numbered 4, 18, 24, 35, 37 and 39. Defendant responds as follows concerning Plaintiff's other "Material Facts" (hereafter, "PMF"):

PMF 1.        Immaterial.   The fact that Plaintiff fancies himself "an independent journalist" was not known to Corporal Bailey.[2]

PMF 2.        Immaterial and unsupported.   Plaintiff's alleged reasons for filming and taking pictures of various locations is irrelevant, as he never explained that to Corporal Bailey. Moreover, Plaintiff does not cite to anything in the record supporting his claim that he "films and takes pictures of various locations of public interest as potential news stories."  Plaintiff admitted at his deposition that he has never sold any of his videos and they have never been used by any kind of news station or website. *Ex. 2*, 194:18-24. The evidence in the record is that Plaintiff posts his videos on his YouTube channel, "Stray Dog the Exposer", which is dedicated to exposing tyranny and corruption, not exploring "locations of public interest as potential news stories." *Ex. 2*, 191:8—192:7; *see also* https://www.youtube.com/c/StrayDogTheExposer/about; https://www.paypal.com/paypalme/StrayDogTheExposer.

PMF 3.        Immaterial.

---

it disingenuously implies that the area Plaintiff walked was a traditional public sidewalk. It was not, and is not even described as such in Plaintiff's own affidavit. *Ex. 3 to Plaintiff's Response, ¶ 6.*

[2] To the extent there is any relevance to the Plaintiff's consideration of himself an independent journalist, it should be noted that Plaintiff is also a "cop watcher." *Plaintiff's Deposition, attached hereto as Exhibit 2,* 93:25—94:24. Defendants submit that Plaintiff's role as "cop watcher" had more to do with the events made the basis of this suit than his role as "independent journalist".  He claims he went to the refinery to get a "story", but he did not start filming until confronted by security.  He then immediately began livestreaming the video to his YouTube page titled, "Stray Dog the Exposer"—a name he came up with because he "like[s] to expose tyranny" and "corruption" by government officials, including cops. *Ex. 2,* 191:8—192:7; *MSJ, UMFs 4-5.* Plaintiff uses this Channel to solicit donations, not for his work as a "journalist", but for his work as a "freedom fighter"—"keep[ing] public officials honest and exposing the                    bad."           *See*           https://www.youtube.com/c/StrayDogTheExposer/about; https://www.paypal.com/paypalme/StrayDogTheExposer.

PMF 5.        Unsupported and Immaterial.

PMF 6.        Immaterial.  The fact that Plaintiff was filming from a public place and never entered private property is irrelevant.  The question is not whether Plaintiff was trespassing, but whether Corporal Bailey reasonably suspected him of criminal activity. *United States v. Guardado,* 699 F.3d 1220, 1225 (10th Cir. 2012) ("Direct evidence of a specific, particular crime is unnecessary. . . Even conduct that is lawful, when observed through the prism of experience and considered in light of the circumstances, may warrant further investigation.")

PMFs 7-9.     Immaterial. *See discussion of UMF 6, above.*

PMFs 10-17.   Immaterial.  Corporal Bailey's subjective understanding of the reasonable suspicion standard and whether it was met in this case is irrelevant. *United States v. Ceballos,* 355 Fed. Appx. 226, 229 (10th Cir. 2009) (officer's "subjective characterization of his actions is irrelevant").

PMF 17.       Immaterial.  Corporal Bailey does not have to articulate a specific crime he suspected Plaintiff of in order for reasonable suspicion to exist. *Guardado,* 699 F.3d 1220, 1225 ("Direct evidence of a specific, particular crime is unnecessary" for reasonable suspicion that criminal activity is afoot to exist). His alleged contention about what conduct constitutes "disturbing the peace" is irrelevant.

PMF 19.       Deny.  The dispatcher advised Corporal Bailey that the reporting party stated that "the male subject [was] standing ***on the outside of the fence***, however, [was] filming in towards the refinery yard." *MSJ, Ex. 5.* The dispatcher further advised the subject was "gonna be on foot" and was also filming employee's vehicles. *MSJ, Ex. 6.* Lastly, Corporal Bailey specifically communicated with dispatch to "confirm this [was] along Main" to which the dispatcher responded that the subject was "gonna be at the main office" and was "walking

eastbound." *See Dispatch Recordings Attached hereto as Exhibits 3 and 4; see also MSJ, Ex. 4; Plaintiff's "Material Fact" No. 24.* While not an explicit "mention that Bustillos was walking along the fence line" the information conveyed was more than sufficient to support Corporal Bailey's perception, based on the dispatch, that Plaintiff was walking along the fence line.

PMF 20.    Immaterial. Corporal Bailey's report is irrelevant to the question of whether he had reasonable suspicion to suspect Plaintiff of criminal activity.

PMF 21.    Immaterial and Disputed. *See Discussion of Plaintiff's Response to Defendant's UMF 7, above.*

PMF 22.    Immaterial. Again, what exactly Mr. Martinez told dispatch is irrelevant. What is important is what dispatch conveyed to Corporal Bailey.  As set forth in the discussion of Plaintiff's "Material Fact No. 19", it was reasonable for Corporal Bailey to believe Plaintiff was walking along the fence line of the property, based on what dispatch conveyed to him.

PMF 23.    Admit, except for Plaintiff's allegation the caller is "careful to relate that Bustillos is outside the facility." The assertion that Mr. Martinez took care to relate that Bustillo was outside the facility is not supported by any evidence in the record.  The only evidence regarding Mr. Martinez's 911 call is the audio of the call and the dispatch log, neither of which provide any evidence that Martinez was "careful to relate that Bustillos is outside the facility."

PMF 25.    Admit.  Here again, however, the information relayed by dispatch to Corporal Bailey was more than sufficient to render his perception that Plaintiff was walking between the fence and the barricades reasonable.

PMFs 26-29.  Immaterial.  Corporal Sanchez's memory of the information conveyed by dispatch is irrelevant, as is what she recorded about that information in her report.

PMFs 30-34.  Immaterial.  The only relevant facts are those that Corporal Bailey was

aware of when he made his demand for identification.  Furthermore, Corporal Bailey need only show a reasonable suspicion that Plaintiff was engaged in *some* illegal activity, not that he had reasonable suspicion Plaintiff had trespassed. *United States v. Vazquez,* 555 F.3d 923, 929 (10th Cir. 2009) ("officer may delay driver for further investigation if the officer has an objectively reasonable, articulable suspicion of *some* illegal activity");  *United States v. Pack,* 612 F.3d 341, 355 (5th Cir. 2010) (noting the Supreme Court requires the police to be able to articular a particularized basis for suspected wrongdoing, but "has often spoken of the wrongdoing itself in general terms.").

PMF 36.      Immaterial.  Plaintiff presumably cites this fact to show some bad or ill motive on Corporal Bailey's part.  An officer's subjective motivations and intentions are irrelevant to the question of whether reasonable suspicion exists. *United States v. Whitley,* 680 F.3d 1227, 1235 (10th Cir. 2012).

PMF 38.      Immaterial.  Here again, Plaintiff presumably cites this fact to suggest that Corporal Bailey arrested Plaintiff for some reason other than his failure to identify himself. But again, Corporal Bailey's subjective motivations are irrelevant.

PMF 40.      Immaterial.  Plaintiff has never once claimed - and there is zero evidence whatsoever - that HollyFrontier's lawsuits and alleged violations of the Clean Air Act were what prompted him to film the refinery on September 11, 2018. Plaintiff's own affidavit states that he was preparing a story "on how the refinery works to turn fuel into gas or asphalt." *Ex. 3 to Response, ¶ 2.*

# IV.

## ARGUMENT AND AUTHORITIES

### A.  Plaintiff Has Failed to Show that Corporal Bailey Violated Fourth Amendment Rights

In arguing that Corporal Bailey lacked reasonable suspicion to demand Plaintiff's identification, Plaintiff relies on two cases that are easily distinguished—*Keylon v. City of Albuquerque,* 535 F.3d 1210 (10th Cir. 2008) and *Corona v. Aguilar,* 959 F.3d 1278 (10th Cir. 2020). In both cases, the defendant-officer demanded the plaintiff's identification on grounds the plaintiff violated Section 30-22-1 of New Mexico's criminal code, which criminalizes "resisting, evading or obstructing an officer."  This section has long been interpreted by New Mexico's Court of Appeals to prohibit three types of conduct: 1) physical acts of resistance; 2) the use of "fighting words", and 3) the refusal to "obey" lawful police commands. *See Corona,* 595 F.3d 1278 at 1283 (internal citations and quotations omitted). In both *Keylon* and *Corona,* the defendant-officers could not point to any act of physical resistance or any fighting words by the plaintiffs.

In *Keylon,* the defendant officer suspected the plaintiff's son of committing a felony.  535 F.3d at 1213.  When he asked the plaintiff for her son's birthday and address, she responded that she did not know. *Id.* Believing this answer to be evasive, the officer asked for the plaintiff's identification. *Id.*  The officer argued that the plaintiff's evasive answer gave him reasonable suspicion of a predicate crime such that his demand for her ID was lawful. *Id.* at 1216.  The problem for the officer was that giving an evasive answer to an officer's question was not enough to violate Section 30-22-1 or any other New Mexico law.  *Id.* at 1216-17.

Similarly, in *Corona,* the plaintiff was a passenger in a vehicle the defendant officer had stopped. 959 F.3d at 1281.  After the passenger asked the officer why he stopped the vehicle for a second time, the officer demanded his identification.  *Id.* Here again, the plaintiff's "repetitive

questioning", while arguably rude and insolent, did not constitute resistance or abuse of an officer under Section 30-22-1. *Id.* at 1284.

In *Keylon* and *Corona* the officers could not point to any conduct that supported any suspicion the plaintiff was engaged in criminal activity *prior* to the officer's demand for identification. That is not true in this case. Corporal Bailey can and has pointed to several facts that gave rise to a reasonable suspicion Plaintiff was engaged in criminal activity before Corporal Bailey ever said a word to him. As set forth in Defendants' Motion, Corporal Bailey was dispatched to the refinery in reference to a suspicious person filming the refinery. There is no dispute that the "suspicious person" was Plaintiff. Corporal Bailey knew Plaintiff was traversing the perimeter of the refinery on foot while filming the facility—behavior that was definitely out of the ordinary in his experience. Corporal Bailey also knew the behavior was alarming enough that a security guard felt the need to call law enforcement and that it attracted the attention of at least two employees. The suspicion aroused by Plaintiff's conduct was enhanced by the fact that it was the anniversary of 9/11 and that Corporal Bailey reasonably believed the refinery to be a "federally protected" building. Considering the information he had and the experience he drew on in processing that information, it was reasonable for Corporal Bailey to suspect Plaintiff was involved in criminal activity and to, therefore, demand his identification.

Plaintiff's attempt to distinguish *Mocek v. City of Albuquerque* is equally unpersuasive. There is no question *Mocek* is much more factually similar than *Keylon, Corona* or any other case brought to the Court's attention. Whether a forum is public, for First Amendment purposes, is irrelevant to the reasonable suspicion analysis. *See Response, p. 11.* What *is* relevant is that in both *Mocek* and this case, the plaintiff's behavior "potentially threatened security procedures at a location where order [is] paramount." *Mocek v. City of Albuquerque,* 813 F.3d 912, 924 (10th Cir.

2015).

Plaintiff's argument that there was "no report of Bustillos being disorderly" is also irrelevant.   Again, Corporal Bailey was specifically dispatched to respond to a report of a "suspicious person".  His own assessment of Plaintiff's filming was that it was out of the ordinary. This assessment was reasonably enhanced by the fact it was the anniversary of 9/11, when officers are justifiably even more sensitive than usual to behavior that is out of the ordinary.   This is especially true when it occurs at a location where security is paramount—something Corporal Bailey most certainly understood, given his understanding that the refinery was a "federally protected" facility. Bailey also reasonably considered the fact that Plaintiff's conduct had been alarming enough that a Navajo security guard called police and had distracted at least two Navajo employees from their duties.

In conclusion, Plaintiff has failed to raise a genuine dispute as to any of the material facts which support a finding that Corporal Bailey had a reasonable suspicion Plaintiff was engaged in criminal activity and, therefore, was entitled to demand Plaintiff's identification.  To say that Plaintiff "merely filmed" from a location that turned out to be public property discounts all the other facts and circumstances at play, as well as the lens of experience through which Corporal Bailey viewed those facts and circumstances.  *Ornelas,* 517 U.S. at 699; *see also Guardado,* 699 F.3d at 1225 ("Even conduct that is lawful, when observed through the prism of experience and considered in light of the circumstances, may warrant further investigation."); *McHugh,* 639 F.3d at 1256 ("when determining if a detention is supported by reasonable suspicion, we 'defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'"); *Gutierrez-Daniez,* 131 F.3d at 942 ("Law enforcement officers may perceive meaning in actions that appear innocuous to the untrained observer."); *United States v. Cortez-Galaviz,* 495

14

F.3d 1203, 1208 (10th Cir. 2007) ("Reasonable suspicion requires a dose of reasonableness and simply does not require an officer to rule out every possible lawful explanation for suspicious circumstances before effecting a brief stop to investigate further."). Moreover, even if Corporal Bailey lacked reasonable suspicion to demand Plaintiff's identification, the violation is not clearly established. As the foregoing discussion reveals, there are no cases in this Circuit with facts very similar to those at issue.[3] Plaintiff has not and cannot point to any precedent which would have rendered any Fourth Amendment violation by Corporal Bailey clearly established.

### B. Plaintiff Has Not Established a Violation of His First Amendment Rights

Plaintiff's argument as to his First Amendment claim centers almost entirely on the argument that the place he filmed from was a "public sidewalk." As discussed elsewhere in this Reply, on the day in question Corporal Bailey was under the reasonable impression the area was not a "public sidewalk" at all and was owned by the refinery. The refinery's employees were under that impression as well. Furthermore, the area bore no resemblance to a traditional public sidewalk, being bordered on one side by the refinery fence and on the other by a cement barrier the refinery had placed there. All this underscores the reasonableness of Corporal Bailey's impression that the area was owned by the refinery.

The fact that the area may be, it turns out, a public space is irrelevant. Plaintiff concedes Corporal Bailey was entitled to stop him and demand his identification if he possessed a reasonable

---

[3] As Defendants pointed out in their Motion, the most factually similar case found in *any* circuit is *Smith v. Hernandez,* which supports a finding that Corporal Bailey is entitled to qualified immunity. Plaintiff contends the case is "unpersuasive", but concedes he could not find any precedent that would have put the officer on notice that any Fourth Amendment violation was clearly established. *Response, p. 10, n. 1.* Plaintiff's remaining argument is difficult to follow—his reference to the Smith plaintiff's inability to point to a factual precedent where the detained persons had engaged in "no boisterous, violent, or disorderly conduct" only underscores the similarities between this case and Smith, as Plaintiff no doubt also contends his conduct was not boisterous, violent or disorderly.  Likewise, the significance of the alleged fact that the plaintiff "has been unable to appeal the district court's determination" is not at all apparent.  Moreover, Plaintiff does nothing to support the allegation or explain its relevance.

suspicion that Plaintiff was engaged in criminal activity. *Response, p. 12.* As set forth in the foregoing section, Corporal Bailey clearly had reasonable suspicion to believe Plaintiff was engaged in criminal activity.

Plaintiff's arguments with respect to the specific crimes of trespassing, prowling and disorderly conduct are unavailing. Corporal Bailey only needed to harbor a reasonable suspicion that Plaintiff was engaged in criminal activity. Even in the context of demands for identification, the Supreme Court has only ever required there be reasonable suspicion of generalized wrongdoing. *Brown v. Texas,* 443 U.S. 47, 99 S. Ct. 2637 (1979) (requiring officers to have "as reasonable suspicion, based on objective facts, that the defendant is involved in criminal activity"); *Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 184 (2004) (same).[4] To the extent Corporal Bailey is required to ground his reasonable suspicion in a specific crime, he has already done so in his Motion for Summary Judgment and will not repeat those arguments here. *MSJ, p. 19-20.*

But the most glaring deficiency in Plaintiff's First Amendment argument is his failure to even address - much less raise any dispute about - the fact that there is no evidence Corporal Bailey's demand for identification and arrest of Plaintiff were motivated as a response to Plaintiff's speech. *MSJ, p. 23.* Without such evidence, Plaintiff cannot maintain a First Amendment Claim. For this and the other reasons discussed herein, Plaintiff's First Amendment claim fails.

WHEREFORE, Defendants respectfully request that the Court find that Corporal Bailey is

---

[4] Plaintiff's contention that Artesia's prowling ordinance is vague also fails. The statute has never been found unconstitutionally vague and Plaintiff makes no real argument that it is. Instead, he cites a few cases where other prowling statutes were invalidated, without any discussion as to the language of those specific statutes, the standard for finding a statute unconstitutionally vague, or the reasons the statutes in those other cases were found to be unconstitutionally vague. Plaintiff contends the statute at issue in *Fields* was "the same", but a quick review of that case shows that the *Fields* statute was not the same as Artesia's statute at all. *See Fields v. City of Omaha,* 810 F.2d 830, 832 (8th Cir. 1987); *MSJ, at* p. 19. The Court should not consider Plaintiff's bald assertion about the validity of Artesia's prowling ordinance. *Utahns for Better Transp. V. United States Dep't of Transp.,* 305 F.3d 1152, 1175 (10th Cir. 2002) ("Issues will be deemed waived if they are not adequately briefed.").

entitled to qualified immunity, grant their Motion for Summary Judgment, dismiss Plaintiff's

Complaint and claims against them with prejudice, award them their taxable costs, and grant such

other and further relief as the Court deems just and proper.


Respectfully submitted,

**ATWOOD, MALONE, TURNER & SABIN, P.A.**

By___*/s/ Bryan Evans*___
      Bryan Evans
      K. Renee Gantert
      PO Drawer 700
      Roswell, NM 88202-0700
      (575) 622-6221
      *Attorneys for Defendants*


I HEREBY CERTIFY that on August 24, 2021, I filed the foregoing instrument electronically through the Court's Mandatory Electronic Filing system which caused all parties of record to be served by electronic means, as more fully reflected on the emailed Notice of Electronic Filing received from the Court.

*Electronically Filed /s/ Bryan Evans*_____
Bryan Evans