IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALBERT BUSTILLOS,**

      **Plaintiff,**

**v.**                                                     **No. Civ. 20-cv-1060-JCH-GJF**

**THE CITY OF ARTESIA and**
**OFFICER DAVID BAILEY,**

      **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendants The City of Artesia and David Bailey ("Defendants") filed a Motion for Summary Judgment and Memorandum in Support (ECF No. 23), seeking dismissal of all claims against them. The Court, having reviewed the motion, briefs, evidence, and applicable law, concludes that the motion should be granted only as to a claim for violation of the New Mexico Tort Claims Act based on a violation of the New Mexico Constitution, but Defendants' motion for summary judgment should otherwise be denied as to all other claims.

**I.     FACTUAL BACKGROUND**

Plaintiff Albert Bustillos ("Bustillos") is an independent journalist who films content for his YouTube channel. (Bustillos Aff. ¶ 1, ECF No. 27-3.) On September 11, 2018, Bustillos went to the Navajo refinery ("Navajo") in Artesia, New Mexico, to film a story on how the refinery works to turn fuel into gas or asphalt. (*Id.* ¶ 2.) Bustillos parked his van and crossed the highway and walked over to Navajo. (Defs.' Undisputed Fact ("UF") ¶¶ 1-2, ECF No. 23.) Bustillos carried with him a camera setup that included his cell phone, a stabilizer device, a Nikon camera, and a battery pack. (*Id.* ¶ 3.)

After Bustillos arrived at the refinery, one of Navajo's security guards, Benito Martinez ("Martinez"), approached him. (*Id.* ¶ 4.) Bustillos then began livestreaming to his own personal YouTube Channel. (*Id.* ¶ 5.) After their encounter, Bustillos walked next to the refinery while filming it. (*Id.* ¶ 6.) The area between the fence and the barriers is an open area that allows pedestrian travel the length of the property. (Bustillos Aff. ¶ 6, ECF No. 27-3.) There are no signs stating private property or prohibiting trespass in the area on which Bustillos was walking. (*Id.*) Bustillos, however, walked alongside the highway because the cement barriers in front of the property were several feet on public property. (*Id.* ¶ 5.)

Martinez called 9-1-1 and reported that there was a guy that was filming at Navajo. (*See id.* ¶ 7; Pl.'s Ex. 1 at 2:3-19, ECF No. 27-1.) Martinez told the dispatcher that the man was filming on the other side of the street, but he was filming inside the refinery. (*See* Pl.'s Ex. 1 at 2:20-22, ECF No. 27-1; Defs.' Reply Ex. 1 (Audio of 911 call) at 0:20-1:10.) Martinez also reported that the man was on foot, outside the fence, but filming inside of the refinery, and later, employee's vehicles. (Defs.' UF ¶ 8, ECF No. 23.) He described the man as wearing a brown shirt, blue Levi shorts, and a fisherman's hat. (*Id.* ¶ 9.)

Corporal David Bailey ("Bailey") of the Artesia Police Department was dispatched to the refinery. (*Id.* ¶ 10.) The dispatcher told Bailey that the call was "in reference to a suspicious person" at the Navajo refinery, that the reporting party was a security guard who was standing by, and that the guard reported the male subject was standing outside of the fence but filming in towards the refinery yard. (*Id.* ¶ 11.) The dispatcher then relayed to Bailey the suspect's description and that the subject was on foot and that the guard reported that he was also filming employee's vehicles. (*See id.* ¶¶ 12-13.)

Corporal Marcie Sanchez ("Sanchez") heard the dispatch and responded to the refinery. (*Id.* ¶ 14.) When she arrived, she saw the man that dispatch described speaking to a Navajo employee. (*Id.* ¶ 15.) Sanchez asked Plaintiff for his ID, but he refused to provide it, explaining that he was doing a story and had stayed on public property the entire time. (*See* Defs.' Ex. 3 ("Video") at 21:16-21:35, ECF No. 23 at 39 of 73.) Plaintiff informed her he would not give her his identification because he had not broken the law. (*See id.* at 21:33-21:47.) He explained that, because he had to have broken the law to be required to turn over all that information, he did not have to give it to her. (*Id.*) The location on which Bustillos filmed was public property. (*See* Bailey Dep. 27:24-28:3, ECF No. 27-2.) No refinery employee accused Bustillos of trespassing. (*See* Sanchez Dep. 9:1-7, ECF No. 27-6; Interview Tr. 7:19-23, ECF No. 27-7.)

In the meantime, Bailey arrived on scene and observed Plaintiff, who fit the description from dispatch, arguing with Sanchez while he filmed with his handheld camera. (Defs.' UF ¶ 17, ECF No. 23.) When Sanchez asked what he was doing, Bustillos responded that he was filming and gathering video footage for stories on matters of interest to the public. (*See* Video at 22:05-23:45, ECF No. 23 at 39 of 73.) He repeated that he remained on public property when doing so, and he knew the boundaries and the applicable laws. (*See id.*) Two other Navajo employees were also present. (Defs.' UF ¶ 18, ECF No. 23.) Bailey approached and was present when Bustillos identified himself as an independent journalist gathering content for stories. (*See* Video at 23:42-50, ECF No. 23 at 39 of 73.)

Sanchez advised him that Plaintiff was refusing to identify himself. (Defs.' UF ¶ 19, ECF No. 23.) Bailey responded that "we definitely can arrest him on that." (Pl.'s Ex. 9 at 2:6-9, ECF No. 27-9.) At that point, Plaintiff replied that he had to have been committing a crime to have to

give an ID. (Defs.' UF ¶ 20, ECF No. 23.) Bailey responded, "No, sir." (*Id.* ¶ 21.) The following

exchange between them then occurred:

| | |
|---|---|
| Bustillos: | Yes, I do! Yes, I do, wanna bet? |
| Bailey: | Yes, sir. |
| Bustillos: | You have to articulate a crime that I have either committed, am committing, or am about to commit. |
| Bailey: | No, sir. No, sir. No, sir. |
| Bustillos: | Wanna bet? |
| Bailey: | Yes, sir. |
| Bustillos: | Alright, you better call your supervisor before you do something stupid. |
| Bailey: | Okay. We were called here- |
| Bustillos: | It don't matter. You can call, and you can come, and you can come investigate. |
| Bailey: | As part of a legal call. As part of that you are the suspect-you are the suspect we were called here to deal with. Therefore, you are required to- |
| Bustillos: | No, I'm not. Suspicion isn't a crime. Suspicion isn't a crime. It's not a felony or a misdemeanor. |
| Bailey: | It's not a matter of whether there's a crime. |
| Bustillos: | Yes, it is. Yes, it does! That is the law, you have to articulate a crime I've committed… |
| Bailey: | Right now, the crime you are committing is failure to identify- |
| Bustillos: | No, no, no, that can't be the first crime, unless I've committed one. *Then* you can get me for refu- for failure. Until then, just for me walking on the sidewalk, it's not permissible for me to give you ID. I don't have to give nothing unless I've been – committed a crime. You better go back and read up the law. |
| Bailey: | Well, for one, you are…on federally protected property.[1] |

---

[1] Bailey believed the property was a federally protected property. The parties do not, however, dispute that the refinery was private property. (*See* Bailey Dep. 51:12-18, ECF No. 23 at 58 of 73.) Instead, the parties dispute the relevance

Bustillos:     I can film all I want. Look, all of it, everything.

Bailey:        It's posted. It's clearly posted.

Bustillos:     It don't matter if it's posted. That's not the law. Do you see a penal code under the sign? No. If it was a law, there would be a penal code. I'm not on their property. Those laws, those rules don't apply to me unless I'm on their property…. I'm on public access. That means I'm a free citizen.

Bailey:        That doesn't matter.

Bustillos:     It does matter. You're ignorant if you don't know the law! You got that badge and that gun, but you don't even know. How you gonna enforce something when you don't even know-

(*Id.*; Video Ex. 3 at 23:52-25:16.)

Bailey then asked Bustillos for his ID, but Bustillos responded that he was not giving him his ID. (*See* Video at 25:14-22, ECF No. 23 at 39 of 73.) Bailey then arrested Bustillos for failure to identify himself in violation of N.M. Stat. Ann. § 30-22-3. (*See* Defs.' UF ¶ 24, ECF No. 23; Incident Detail Report 3, ECF No. 23 at 49 of 73.)

At the time, Bailey erroneously believed that Bustillos had been on Navajo property, which he thought extended all the way to the curb, but he acknowledged he would have tried to confirm that fact before charging it. (*See* Bailey Dep. 24:18-25:5, ECF No. 23 at 56 of 73.) Although there are barricades in front of the refinery, they were actually several feet on public property, and Bustillos, who had researched maps of the area, stayed on public property. (*See id.*; Bustillos Aff. ¶¶ 3-5, ECF No. 27-3.) Bailey also believed that Bustillos was acting suspiciously by filming in a manner that caused the security personnel to call 9-1-1. (*See* Bailey Dep. 25:6-13, 42:23-44:8, ECF No. 23 at 56-57 of 73; Hr'g Tr. 10:12-25, ECF No. 23 at 61 of 73.) Bustillos' actions heightened

---

of Bailey's belief that the refinery enjoyed special protection from the federal government. Inferences construed in Plaintiff's favor are that the refinery was private property. Nevertheless, Bailey's belief that the refinery could present a potential terrorist target is relevant to the reasonable suspicion analysis. (*See id.* at 50:9-51:3.)

Bailey's concerns because he was filming the refinery on the anniversary of the 9/11 terrorist attacks on the World Trade Center, because that is a day in which law enforcement is a bit on heightened alert for things out of the ordinary. (*See* Bailey Dep. 50:4-51:3, ECF No. 23 at 58 of 73.) Although Bailey does not have specific training related to terrorism, he believed Bustillos' actions to be out of the ordinary based on his experience with limited foot traffic around the refinery. *(See* Bailey Dep. 50:4-52:1, ECF No. 27-2; Hr'g Tr. 10:10-25, ECF No. 23 at 61 of 73.)

At the time Bailey arrested Bustillos, his understanding of the law for concealing identification based on his academy training was that if he was dispatched to a call for service, he was within his rights to demand identification. (*See* Bailey Dep. 20:1-13, ECF No. 27-2.) In the months leading up to the trial of Bustillos, Bailey researched cases to prepare for the criminal prosecution and learned of the requirement that there be reasonable suspicion of a predicate crime before demanding identification. (*See id.* 16:4-18:14.) Bailey then conducted research to determine possible predicate crimes that would support his request for identification of Bustillos. (*Id.* at 21:12-22.)

## II.    STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the lawsuit and a dispute is "genuine" if the evidence presented could allow a rational jury to find in favor of the non-moving party. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted). Summary judgment "is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Shero v. City of Grove*,

510 F.3d 1196, 1200 (10th Cir. 2007). In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his or her favor. *Id.*

### III.    ANALYSIS

State officials sued in their personal capacity for damages under § 1983 may raise the defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating both that (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *Id.* The Tenth Circuit has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1134-35 (internal citations omitted). The protection afforded by qualified immunity applies to government officials whether their mistake is one of law or fact – or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A decision to afford an officer qualified immunity is almost always a question of law, to be decided by a court prior to trial. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217 (10th Cir. 2008).

### A.    Violation of Fourth Amendment (Count 1)

The warrantless arrest of a person in a public place based on probable cause does not violate the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42 (1976). Probable cause to support a warrantless arrest exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable person to believe that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In determining whether probable cause exists, a court applies a totality-of-the-circumstances analysis. *United States v. Cruz*, 977 F.3d 998, 1004 (10th Cir. 2020).

Bailey arrested Bustillos for concealing his identity in violation of N.M. Stat. Ann. § 30-22-3. "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer . . . in a legal performance of his duty …." N.M. Stat. Ann. § 30-22-3. "Section 30–22–3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 1999-NMCA-072, ¶ 12, 127 N.M. 472 (quoting *In re Suazo*, 117 N.M. 785, 793 (1994)).

But, Fourth Amendment jurisprudence requires that, before an officer arrests an individual for concealing identity, the officer must have at least "reasonable suspicion" that the individual was involved in "some predicate, underlying crime." *Keylon*, 535 F.3d at 1216. This precedent was clearly established at the time. *See id.* at 1220. *See also Brown v. Texas*, 443 U.S. 47, 53 (1979) (holding that detaining an individual and requiring him to identify himself violated the Fourth Amendment because the officers lacked reasonable suspicion to believe the individual was or had engaged in criminal conduct). Accordingly, to answer the question of the legality of Plaintiff's arrest, the Court must address two issues: (1) whether Bailey had reasonable suspicion that Bustillos committed or was committing a predicate crime, and (2) whether Bailey had probable cause to arrest Bustillos for concealing identity when he failed to produce identification. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 922-23 (10th Cir. 2015); *Keylon*, 535 F.3d at 1216-17.

## 1. Reasonable suspicion of other crimes

Reasonable suspicion requires some minimal level of objective justification for believing a suspect is committing a crime. *United States v. McHugh*, 639 F.3d 1250, 1255-56 (10th Cir. 2011). For reasonable suspicion to exist, more than a hunch is required, but an officer does not

need to rule out the possibility of innocent conduct, and reasonable suspicion may exist even if it is more likely than not that the person is not involved in any illegality. *Id.* at 1256; *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). "Evidence falling 'considerably short' of a preponderance satisfies this standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). A court considers the totality of the circumstances and the information available to the officer to determine whether reasonable suspicion existed, and the officer's subjective motivations are irrelevant. *See id.* A court may consider an officer's objectively reasonable mistake of fact when considering whether the officer had reasonable suspicion. *See United States v. Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009).

Defendants argue that Bailey had reasonable suspicion of possible criminal activity to warrant further investigation based on the following facts: (1) it was the anniversary of the 9/11 terrorist attacks; (2) Bustillos was filming a refinery; and (3) the refinery's security guards found Bustillos' behavior alarming enough to call the police. Defendants also argue that Bailey did not have to identify a specific crime to find reasonable suspicion existed. Indeed, in *United States v. Guardado*, the Tenth Circuit stated: "Direct evidence of a specific, particular crime is unnecessary…. Even conduct that is lawful, when observed through the prism of experience and considered in light of the circumstances, may warrant further investigation." 699 F.3d 1220, 1225 (2012). Moreover, Defendants also contend, that even if identification of a specific crime is required, Bailey had reasonable suspicion of disorderly conduct under *Mocek*, terrorist activity, trespass, and violation of Section 5-1B-3 of Artesia's Municipal Code. The Court will examine each of these potential criminal activities in turn.

### a. Disorderly conduct

Defendants cite as instructive *Mocek*, in which the plaintiff therein refused to show identification at an airport security checkpoint, began filming the encounter, and persisted in filming despite orders by the agents to stop filming. 813 F.3d at 920. An officer told him that, because he was under investigation for disturbing the peace, he could be arrested for failing to present identification. *Id.* at 920-21. When the plaintiff still refused to identify himself, he was arrested. *Id.* The Tenth Circuit examined the New Mexico disorderly conduct statute that criminalizes conduct that is "violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly" and that tends to disturb the peace. *Id.* at 923 (citing N.M. Stat. Ann. § 30-20-1(A)). The Tenth Circuit concluded that the police had reasonable suspicion to believe that the plaintiff was engaged in disorderly behavior where airport security agents informed the police that he had been causing a disturbance, he refused orders to put down his camera, and he was filming agents, and officers observed that at least three agents left their other duties to respond to the disruption. *See id.* at 923-24. The *Mocek* court, however, cautioned that its conclusion was based on the "uniquely sensitive setting" in the case and noted that conduct that is benign elsewhere might disturb the peace in a location where order and security are of obvious importance, such as at an airport security checkpoint. *Id.* at 924.

Defendants argue that, because the refinery is a critical part of the energy sector and could pose a potential terrorist target, the Court should consider the need for order and security at Navajo to be analogous to the airport security checkpoint. While the nature of the location is a factor in the analysis, this case is not on all fours with *Mocek*. Unlike in *Mocek*, Bustillos here was not attempting to enter the refinery, nor was he causing a disturbance in a crowded security line that distracted the security guards in a manner that threatened order and security at the refinery. Instead, the facts in Plaintiff's favor show that he was filming the refinery from a public location while

walking along the public way in a manner that does not suggest he was likely to cause violence or disturbing the peace of the area. When Sanchez approached Bustillos, he informed her that he was doing a story and had stayed on public property. Bailey was present when Bustillos identified himself as an independent journalist gathering content for stories. The facts here are sufficiently distinguishable from *Mocek* that it does not apply, and the Court is not convinced that Bailey had reasonable suspicion that Bustillos violated § 30-20-1. *Cf. Buck v. City of Albuquerque*, 549 F.3d 1269, 1285 (10th Cir. 2008) (explaining that, under New Mexico law, disorderly conduct involves acts likely to cause violence or which disturbs the peace and quiet of community by causing consternation or alarm); *State v. Doe*, 1978-NMSC-072, ¶ 7, 92 N.M. 100 (holding there was no probable cause to arrest defendant where he was not being combative, nor was it apparent his words or actions would produce violence or disturb the peace).

### b.  Potential terrorist activity

Next, Defendants rely on a Northern District of Texas case to argue that they are entitled to qualified immunity because the officer had a minimal level of suspicion to investigate for potential terrorism. In *Smith v. Hernandez*, the plaintiff was standing on a public sidewalk and taking pictures of a routine flaring at a pipeline plant, when someone called 9-1-1 to report him as a suspicious person. NO. 4:19-CV-940-A, 2020 U.S. Dist. LEXIS 58005, at *1-2 (N.D. Tex. Apr. 1, 2020). The 9-1-1 caller never reported a trespass. *Id.* at *2. The responding officer, however, approached the plaintiff and informed him incorrectly that he was investigating a tip about a person who went through the pipeline gate, which the plaintiff denied. *Id.* at *2. When the plaintiff refused to identify himself, the officer handcuffed him, opened his backpack, removed his driver's license from the wallet, and then released him after learning he never went behind the gate and had no warrants. *Id.* The district court stated that a reasonable officer could conclude that the investigatory

stop was supported by reasonable suspicion that the plaintiff was preparing an attack on a potential

terrorist target. *See id.* at *15.  Accordingly, the district court dismissed the plaintiff's § 1983 claim

for unlawful detention against the officer based on qualified immunity. *See id.* at *14-15.

As an initial matter, *Smith* is an out-of-circuit district court case and of no precedential

value. The Court declines to follow it because the facts here do not support reasonable suspicion

of terrorism. Bustillos was filming the refinery in the daytime on public space. He told the officers

he was collecting footage for a story. The refinery is a place of public interest and there is no

evidence that the officers had reason to believe Plaintiff was carrying any sort of weapons. While

the reasonable suspicion standard is low and the September 11th date is of some relevance, the

Court, construing the facts and inferences in favor of Plaintiff, remains unconvinced that Bailey

had reasonable suspicion to believe Bustillos was committing a crime linked to terrorism.

### c.   Trespass

Defendants argue that Bailey's information was that Plaintiff was walking outside the fence

and that it was not unreasonable to believe that Navajo owned all the way to the curb, even though

that belief proved mistaken. In response, Plaintiff asserts that there is no evidence that he

committed a trespass, pointing to the lack of mention in the dispatcher's call to Bailey that Bustillos

had trespassed, and Bailey's report merely related that dispatch informed him that the man was

walking along the fence.

Under New Mexico law, "Criminal trespass consists of knowingly entering or remaining

upon posted private property without possessing written permission from the owner or person in

control of the land" or of "knowingly entering or remaining upon the unposted lands of another

knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant

thereof." N.M. Stat. Ann. § 30-14-1(A)-(B). The record indicates that the area was public property

and that there were no posted signs validly marking the walkway as private property. The facts construed in Plaintiff's favor indicate that Bustillos was never on private property and none of the security guards reported that Bustillos was trespassing. There is therefore a fact question as to whether Bailey had reason to believe that Bustillos committed a trespass and as to whether Bailey's mistaken belief that Bustillos may have been trespassing was reasonable. Construing facts in Plaintiff's favor, a jury could determine that Bailey did not have reasonable suspicion to believe that Plaintiff committed a trespass.

### d. Loitering or prowling

According to Defendants, § 5-1B-3 of Artesia's Municipal Code makes it unlawful for a person to loiter or prowl in a place, at a time, or in a manner that is not usual for law-abiding individuals under circumstances that warrant alarm for the safety of a nearby person or property. Defendants argue that the Navajo security personnel found Bustillos' actions unusual enough to call the police, and thus, that Bailey had reasonable suspicion to investigate him for loitering or prowling.

The term "loiter" means to spend time idly or to hang around aimlessly. *See Balizer v. Shaver*, 1971-NMCA-010, ¶¶ 20-21, 82 N.M. 347. *See also* "Loiter," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/loiter (last visited Mar. 9, 2022) (defining "loiter" as "to delay an activity with idle stops and pauses," "to remain in an area for no obvious reason," or "to lag behind"). To "prowl" means "to move about or wander stealthily in or as if in search of prey" or "to roam over in a predatory manner." *See* "Prowl," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/prowl (last visited Mar. 9, 2022). The facts here, construed in Plaintiff's favor, do not suggest Plaintiff was acting with idleness, lack of purpose, stealth, or in a predatory manner. Bustillos was actively filming in the

open during daytime hours while walking outside the perimeter of the refinery. *Cf. Fields v. City of Omaha*, 810 F.2d 830, 835 (8th Cir. 1987) (explaining that walking in middle of street at night did not constitute "loitering" or "prowling" as these words are commonly defined). While the security guards found the situation unusual enough to call 9-1-1 for police assistance, the time of day and the manner in which Bustillos was filming the facility does not give rise to a reasonable belief that Bustillos' conduct amounted to "loitering" or "prowling."[2]

### e. Lack of reasonable suspicion of predicate crime

For the foregoing reasons, a jury, construing the facts in Plaintiff's favor, could find that Bailey did not have reasonable suspicion that Bustillos was committing a crime. Without reasonable suspicion of a predicate crime, Bailey could not arrest him for concealing identity without violating Plaintiff's Fourth Amendment rights.

### 2. Clearly established right

Having determined that Plaintiff met his burden on the first prong of the qualified immunity analysis, the Court must next determine whether that right was clearly established. In defining the right that must be clearly established, the Tenth Circuit has cautioned that the Court's inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (internal quotations omitted). This particularity is especially important in the context of the Fourth Amendment, because it may sometimes be "difficult for an officer to determine how the relevant legal doctrine … will apply

---

[2] Plaintiff also argues that this Artesia ordinance is constitutionally infirm. However, "the validity of the statute is hardly relevant to the probable cause determination because officers generally may presume that statutes are constitutional until declared otherwise." *Mocek*, 813 F.3d at 927-28 (citing and quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) for proposition that "[p]olice are charged to enforce laws until and unless they are declared unconstitutional[, so t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws"). Given the Court's ruling that Bailey did not have reasonable suspicion to believe Bustillos was loitering or prowling, the Court need not determine whether the ordinance is flagrantly unconstitutional, as urged by Plaintiff.

to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Courts should not define clearly established law at a high level of generality that avoids the crucial question whether the official acted reasonably in the particular circumstances he faced. *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

In the qualified immunity context, a defendant is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In other words, a court must ascertain if there was arguable probable cause for the arrest. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). The probable cause standard is an objective standard, so an officer's subjective belief as to whether he had probable cause to arrest a suspect is not dispositive. *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). Ordinarily, to be clearly established, the plaintiff must identify a Supreme Court or Tenth Circuit case on point, or the clearly established weight of authority from other courts must state that the law is as the plaintiff maintains. *See Grissom v. Roberts*, 902 F.3d 1162, 1167-68 (10th Cir. 2018). Indeed, it must be "beyond debate" based on existing case law that the arrest lacked legal justification. *Kerns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011).

Here, the constitutional right that Bailey violated was clearly established at the time this incident occurred: to arrest a person for concealing identity, there must be reasonable suspicion of another predicate, underlying crime. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). While Plaintiff has not cited a case that is factually identical with this one, that omission is not always dispositive, because officials may be on notice that their conduct violates established law even in novel factual circumstances. *A.M.*, 830 F.3d at 1135. The "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from

prior case law to clearly establish the violation." *Id.* at 1135-36 (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)).

The facts construed in Plaintiff's favor are that Bustillos was always on public property, in daytime, in the open, filming the refinery while walking its perimeter, and that he told the officers that he was filming a story. That the filming occurred on September 11, 2018, is not enough to establish reasonable suspicion that Plaintiff was engaged in a crime or terrorist activity, given the lack of other facts indicating criminal or terrorist activity. Based on the facts in Plaintiff's favor, no reasonable person in officer's position could have thought he had reasonable suspicion of a predicate crime that would permit him to arrest Bustillos for concealing his identification. In the absence of any basis for suspecting an individual of misconduct, the balance between the public interest and person's right to personal security and privacy tilts in favor of freedom from police interference. *Brown v. Texas*, 443 U.S. 47, 52 (1979).

### B.      Violation of First Amendment (Count 2)

"The First Amendment right to gather news is … not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press." *Glik v. Cunniffe*, 655 F.3d 78, 83 (2011). News-gathering protections of the First Amendment do not turn on professional credentials or status. *Id.* at 84 (explaining that "changes in technology and society have made the lines between private citizen and journalist exceedingly difficult to draw," because the "proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper"). Traditional public fora, like sidewalks and streets, are places that have been traditionally devoted to assembly and debate

and other exercises of a citizen's right to free speech. *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148 (10th Cir. 2020). "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

If a government official takes adverse action against an individual because that person engaged in protected speech, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the person may generally succeed on a First Amendment claim. *Nieves v. Bartlett*, __ U.S. __, 139 S.Ct. 1715, 1722 (2019). To prove a First Amendment retaliation claim, a plaintiff must show (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. *Mocek*, 813 F.3d at 930 (quoting *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). A plaintiff must show "but-for" causation, in other words, that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Nieves*, 139 S.Ct. at 1722.

Defendants argue that Plaintiff cannot satisfy the third requirement to state a First Amendment retaliation claim because there is no evidence that Bailey's actions were substantially motivated as a response to Plaintiff's exercise of his First Amendment rights. Bailey arrested Bustillos for concealing identification, but a jury could determine, after considering the facts in Plaintiff's favor, that Bailey asked for Bustillos' identification because he was filming the refinery. Based on the timing of the events and the basis for Bailey's suspicions of Bustillos being linked to his filming, the Court finds that Plaintiff has some evidence of but-for causation sufficient to survive summary judgment. For the reasons discussed above, the Court rejects Defendants' second

argument that Plaintiff cannot meet this element as a matter of law because Bailey had reasonable suspicion to demand Plaintiff's identification, and then probable cause to arrest him when he refused to provide it. Consequently, Defendant is not entitled to summary judgment or qualified immunity on Plaintiff's First Amendment claim. *Cf. Glik*, 655 F.3d at 85 (holding that district court did not err in denying qualified immunity to police officers on plaintiff's First Amendment claim against officers who arrested plaintiff for filming them, because a citizen's right to film government officials or matters of public concern in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment).

### C.     Violation of New Mexico Tort Claims Act (Count 3)

Count 3 of Plaintiff's complaint asserts state law claims for false arrest, malicious prosecution, and for deprivation "of his rights, privileges or immunities secured by the constitution and laws of the United States and New Mexico" under the New Mexico Tort Claims Act. (Compl. ¶ 74, ECF No. 1-1.) According to Defendants, they are entitled to summary judgment on the state law claims because Plaintiff cannot make the requisite showing that Bailey arrested him without probable cause. Again, for the reasons discussed *supra*, the Court finds that questions of fact preclude finding as a matter of law that Bailey had probable cause to arrest Bustillos. Consequently, the Court denies Defendants' request for summary judgment on Count 3 as to Plaintiff's claims for false arrest, malicious prosecution, and deprivation of his rights under the First and Fourth Amendments of the U.S. Constitution.

Plaintiff, however, failed to allege in his complaint violations of any specific provisions of the New Mexico Constitution. Nor did he assert any such claims in his response. Defendants contend that, because Plaintiff did not identify which right, privilege, or immunity he was deprived of under the New Mexico Constitution, any such claim under the New Mexico Constitution should

be dismissed. The Court agrees that Plaintiff has failed to assert a claim under the New Mexico Constitution with enough specificity to survive summary judgment. To the extent Plaintiff is attempting to assert a separate claim under the New Mexico Constitution in Count 3, the Court will dismiss that claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Memorandum in Support (**ECF No. 23**) is **GRANTED** only as to a claim for violation of the New Mexico Tort Claims Act based on a violation of the New Mexico Constitution, but Defendants' motion is **DENIED as to all other claims**.


SENIOR UNITED STATES DISTRICT JUDGE